IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOYCE L. WINN,  CV-04-1781-CO

    Plaintiff,  FINDINGS AND
  RECOMMENDATION
  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

COONEY, Magistrate Judge:

## BACKGROUND

    Plaintiff, Joyce Winn (Winn), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. §§ 401 et seq. This court has jurisdiction under 42 U.S.C. § 405(g).

    Winn filed for DIB on December 4, 2001, alleging a disability onset date of May 23, 2001, due to fibromyalgia, muscle tension, spasms, and fatigue. Tr. 66, 75. At the time of her alleged onset Winn was approximately 47 years old. She has an eighth grade education, and past work as a sterile supply technician, a hospital

environmental services worker, and as an electronics assembler. Tr. 67.

Following a hearing, where Winn was not represented by counsel, the Administrative Law Judge (ALJ) issued a decision on August 19, 2004, finding Winn was not disabled. Tr. 15-24. On November 5, 2004, the Appeals Council denied Winn's request for review, making the ALJ's decision final. Tr. 6-8.

On appeal to this court Winn alleges the following errors in the ALJ's decision: (1) holding a hearing even though Winn was not represented by counsel; (2) failing to find some of her alleged impairments "severe" at step two; (3) failing to order a consultative mental examination; (4) incorrectly assessing her residual functional capacity; and, (5) failing to pose a complete hypothetical question at step five.

For the reasons that follow, the Commissioner's decision should be AFFIRMED, and this case should be DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the

burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512.  Each step is potentially dispositive.

Here, at step one, the ALJ found that Winn had worked since her alleged onset date of disability, but not at the substantial gainful activity level. Tr. 19, 23; see 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Winn's fibromyalgia and status post cervical spine surgery were "severe" impairments, as defined by the regulations. Tr. 20, 23; see 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Winn's impairments did not meet or equal the requirements of a listed impairment. Tr. 20, 23; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Winn with the residual functional capacity (RFC) to perform light work, limited by only occasional overhead reaching, the option to sit or stand as needed, and no climbing of ladders, ropes or scaffolds. Tr. 20, 23; see 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four, the ALJ found Winn could return to her past relevant work as an electronics assembler. Tr. 23-24. Having found Winn not disabled at step four, the ALJ did not reach step five of the sequential evaluation. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

## DISCUSSION

**I. The ALJ properly permitted Winn to represent herself at the hearing.**

Throughout her memorandum Winn contends the ALJ erred by allowing her to represent herself at the hearing. She argues that the exchange she had with ALJ Kingrey at the commencement of her

4 - FINDINGS AND RECOMMENDATION

hearing, in which the ALJ sought to ensure that Winn was aware of her option to be represented, shows that "the ALJ improperly pursued having a hearing under the wrong circumstances." Tr. 268-269. I disagree.

Civil litigants, unlike criminal defendants, do not have a constitutional right to appointment of counsel. U.S. CONST. AMEND. VI. While attorneys and non-attorneys may serve as representatives in Social Security Administration hearings, these proceedings are designed to allow the claimant to represent herself. 42 U.S.C. §§ 406(a), (c); see also 20 C.F.R. §§ 404.1700-1710.

The Social Security Administration notified Winn of these provisions in May 2002, May 2003, and May 2004. Tr. 27, 35-36, 40. Therefore, Winn had ample notice of her option to be represented at her hearing, and ample time to secure representation. In the ALJ's colloquy with Winn at the start of her hearing, she made two statements. First, she said, "If I could find somebody that would take it, yeah. That would be better for me." Tr. 268. Then, after the ALJ explained that if she decided to do that her hearing would be further delayed, Winn stated, "Well, let's go ahead and do it." Tr. 269.

I find these facts do not support Winn's contention that she involuntarily proceeded with the hearing. The ALJ reasonably took Winn at her word that she wanted to proceed, after notifying her for the fourth time that she could find counsel to represent her.

5 - FINDINGS AND RECOMMENDATION

As Winn herself points out, she had approximately 17 months from the date she first requested a hearing until the actual hearing date in which to seek representation if she so desired.

**II. The ALJ's step two determination was based on substantial evidence.**

Winn argues the ALJ erred at step two of the sequential evaluation by failing to find three of her alleged limitations were "severe" within the meaning of the Act. Specifically, she claims the following to be severe impairments: (1) inability to hold her head down in a fixed position; (2) short-term memory loss; and, (3) lack of concentration.

In order to get past step two of the sequential evaluation, the claimant must prove (a) that she has a "medically determinable physical or mental impairment," and (b) that it is severe, within the meaning of the Act. See 20 C.F.R. §§ 404.1504, 404.1520(c); see also Edlund, 253 F.3d at 1159-60. To show a "medically determinable physical or mental impairment" the claimant must proffer "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. To show an impairment is "severe," the claimant must also show that is significantly limits her ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to

supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. See SSR 96-3p.

Here, the ALJ found that only two of the impairments Winn alleged were severe – fibromyalgia and status post cervical spine surgery. Tr. 20. According to Winn, he "ignored" evidence of her other allegedly severe impairments. However, Winn does not direct this court to objective medical evidence in the record to support this claim. Instead, she relies primarily on her own testimony.

Since none of Winn's treating physicians provided an assessment of her work-related functional limitations, two Disability Determination Services physicians assessed her abilities based on her record. Though they noted that the severity or duration of her symptoms was disproportionate to the medical evidence, nevertheless Richard Alley, M.D., and Martin Kehrli, M.D., assessed Winn with the ability to lift 20 pounds occasionally, 10 pounds frequently, sit for 6 out of 8 hours a day, etc.. Tr. 169-174. They did not assess any limitations in ability to hold her head down, or in concentration or memory.

Winn contends that these physicians didn't know about her inability to hold her head down because she raised this complaint for the first time on January 6, 2003, on her Request for a Hearing

form, Tr. 49; thus, they could not have addressed this complaint and, therefore the ALJ should have accepted Winn's own testimony about it.

This argument is unpersuasive principally because the duty is on the claimant, at every step except step five, to prove that she is disabled. As discussed above, at step two, the claimant's burden requires her to proffer objective medical evidence that she has a medically determinable impairment, and also that it causes work-related limitations. The ALJ cannot be required to simply believe a claimant's subjective allegations, "or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." See <u>Fair v. Bowen</u>, 885 F.2d 597,603 (9th Cir. 1989).

Winn points to no medical evidence upon which the ALJ might have determined that the above alleged impairments were severe. Though she sought treatment for her spinal injuries and fibromyalgia pain, she never complained of problems holding her head down, or of concentration or memory problems. These impairments were alleged for the first time on disability worksheets. Tr. 49, 66. The ALJ reasonably omitted to mention them because not only did the medical evidence fail to establish their existence, but her testimony was found to be less than fully credible.

In determining the credibility of a claimant's statements, the ALJ is required to consider the entire record. SSR 96-7p. The ALJ may find a claimant not entirely credible, but a general assertion that a claimant is not credible is insufficient. The ALJ must give specific reasons, supported by substantial evidence, indicating that the ALJ has not arbitrarily discredited a claimant's testimony. See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002); see also Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)(listing multiple factors the ALJ should consider in assessing a claimant's credibility).

However, if a claimant does not produce objective medical evidence of an underlying impairment that could reasonably be expected to cause some degree of the symptoms she alleges, the ALJ need not give any reasons for rejecting the claimant's testimony as to those alleged impairments. Cf. Smolen, 80 F.3d at 1281-82.

The ALJ gave three main reasons for finding Winn less than fully credible: (1) Winn's activity level was inconsistent with the degree of disability alleged; (2) Winn's self reports were not entirely consistent; and (3) the objective medical evidence did not support the severity of symptoms alleged.

The ALJ noted that Winn used the internet, did needlework, attended church, did all the housework for a three-adult household, prepared three meals a day for herself and also cooked on a daily basis for her sister and brother-in-law, cared for cats and dogs,

walked the dogs two or three times a week, drove a car, grocery shopped on a weekly basis, visited friends and relatives, went to the post office, and was learning to do "the books" for her brother-in-law. Tr. 22.

Winn's activity level was pieced together from disability worksheets she filled out when she initially applied for disability, from worksheets her sister filled out, and from Winn's testimony at the hearing. The ALJ found that Winn's sister reported more frequent and difficult activities than Winn admitted to on her disability worksheets, or even at the hearing, evidencing a lack of candor on Winn's part. For instance, on one worksheet Winn omitted to mention that she prepares the meals for herself, her sister, and her brother-in-law on a daily basis, in exchange for room and board. Tr. 22, 107-113. Further, on another questionnaire she stated that she "cannot accomplish simple tasks" due to fatigue, and that her average day consists of "arise, [sic] feed pets, drive to post office, home." Tr. 103, 105. Even at the hearing Winn did not admit to internet use and needlepoint work. Tr. 268-279.

Winn also made inconsistent reports to her treating physicians. For instance, in December 2001, Winn told Nancy Maloney, M.D., that she had a fifteen year history of fibromyalgia, yet she was not diagnosed with fibromyalgia until January, 2002. Tr. 21, 129, 158. Then, just two months later, on March 20, 2002,

Winn told David Evans, M.D., that she had been diagnosed with fibromyalgia approximately three to four years before.  Tr. 22, 132-33.  The ALJ also noted inconsistent statements about why she stopped working in May, 2001.  Tr. 21-22.  On the one hand she said she was terminated, while on the other, she said "she just could not adequately perform her work tasks."  Tr. 132.

Finally, the ALJ found the objective medical evidence in general did not support the severity of symptoms alleged by Winn. Joel M. Depper, M.D., was treating Winn for Myofacial Pain Syndrome in February, 2000, when she announced that she wanted to go on disability (more than one year before her alleged disabiltiy onset date).  Tr. 160.  Dr. Depper discouraged her, noting in her chart that he "was not ready for her to take this step," because he thought Winn "should be able to find a level of medication which will allow her to function" or else "different work, which is more fulfilling for her."  Tr. 159-60.

In July 2000, Winn underwent a cervical discectomy after which she returned to work.  Tr. 181-183.  Post-surgical films showed no sign of complications at C4 through C6 and "near anatomic" alignment.  Tr. 190.  On May 7, 2001, Winn complained to Steven Cross, M.D., of a migraine headache and neck tenderness, but manipulation "seemed to help immediately."  Tr. 140.  After she stopped working later that month, she returned to Dr. Cross on June

26, 2001, complaining of gastrointestinal problems, stress, and a plantar wart. Tr. 140.

In November 2001, Wimm returned to Dr. Depper's office and reported that "she had to stop her job" because of pain. Tr. 159. Dr. Depper noted that she was "struggling" and that she had "diffuse trigger point tenderness" throughout her back and into her gluteal muscles. He wrote, "I would certainly support her request for Disability status." Tr. 158.

In December 2001, Nancy Maloney, M.D., performed a consultative evaluation of Winn, and found that her pain was managed by Darvocet and Flexeril, that she had "no cranial dysfunction," she could walk, jump, and squat normally, had 5/5 muscle strength in all limbs, and could manipulate small items with her right and left hands. Tr. 128-29.

In March 2002, David Evans, M.D., performed another consultative evaluation, and found that Winn had symptoms consistent with fibromyalgia, but no evidence of arthritis or another systemic process. Tr. 133. On this occasion Winn complained of muscle pain "in her low back, thighs, lower abdomen, upper back and neck, and bilateral shoulders." Tr. 132. She reported "difficulty lifting objects off the floor and above her head" and that she could only walk 100 yards before needing to rest, could only sit for 30 minutes at a time, and could only stand for 20 minutes at a time. Id. However, Dr. Evans determined from

clinical testing that Winn had a normal range of motion in all joints, no joint pain, normal strength and reflexes in her upper and lower extremities, and a normal gait.  Tr. 133.

In sum, the ALJ concluded that the objective medical evidence did not fully support Winn's subjective complaints, which, in combination with other valid reasons for questioning the candidness of her testimony, caused the ALJ to reasonably conclude that Winn was less than fully credible.

### III. **The ALJ properly assessed Winn's residual functional capacity. His duty to further develop the record was not triggered.**

A claimant's residual functional capacity (RFC) measures what an individual can do despite her limitations.  SSR 96-8p.  The ALJ must consider the whole record, and reconcile inconsistencies between medical and testimonial evidence, in order to arrive at a claimant's RFC.  See SSR 96-5p.

Winn contends the ALJ erred by failing to include limitations related to the following alleged impairments in her RFC assessment: (1) inability to hold her head down in a fixed position; (2) short-term memory loss; and, (3) lack of concentration.  As discussed above, the ALJ did not even find these to be severe impairments, at step two, because there was no objective medical evidence in the record to substantiate their existence.  Thus, he properly omitted to include any limitations related to these unsupported allegations in his assessment of Winn's RFC.

13 - FINDINGS AND RECOMMENDATION

Throughout her memorandum Winn argues that the ALJ failed to produce medical evidence to refute her allegations with respect to these impairments. For instance, she writes,

> The ALJ...failed to request a medical examination or opinion related to mental limitations. Ms. Winn testified that she is deficient in concentrating and in short-term memory. Both of these problems would affect her ability to work. Despite mental complaints, the ALJ failed to solicit a medical opinion to ascertain the degree of limitation. A mental health provider did not examine Ms. Winn, which was necessary to document the degree of limitation she has or how those limits affect her working.

(Pl. Brief at 21-22.)

This position suffers from the same infirmity as Winn's contention that the ALJ should simply credit her unsubstantiated testimony- it attempts to shift the burden onto the Commissioner to disprove disability. The regulations plainly state that the burden of proving disability is on the claimant. 20 C.F.R. § 404.1512. The claimant "must provide medical evidence showing that [she has] an impairment(s) and how severe it is . . . ." 20 C.F.R. § 404.1512(c). The evidence must come from "acceptable medical sources" listed in 20 C.F.R. § 404.1513, and should include (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed, and the claimant's response, and prognosis; and (6) a statement about what the claimant can still do despite her impairment(s) "based on the acceptable medical source's findings."

The Social Security Administration (SSA) "will make an initial request for evidence from [the claimant's] medical source" and if the medical source has not responded within 20 days of the request, they "will make one followup request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(d). If the evidence provided by the medical source "contains a conflict or ambiguity" that cannot be resolved by other evidence in the record, then the SSA will re-contact the medical source for clarification. 20 C.F.R. § 404.1512(e); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). If the medical source does not provide clarification, then SSA has the option of ordering a consultative evaluation to resolve the conflict or ambiguity. 20 C.F.R. § 404.1512(f).

However, the SSA has no duty to develop the record if the claimant simply fails to provide medical evidence to support her allegations. In that case, the SSA will make a decision based on the available information. 20 C.F.R. § 404.1516.

Here, where Winn simply failed to produce any medical evidence of her alleged mental impairments, or the names of medical sources who could provide such evidence, the ALJ found that Winn did not have severe mental impairments at step two, and therefore assessed no work-related mental limitations in his RFC finding. This assessment was reasonable, and based on substantial evidence in the record.

## IV. The ALJ's step four determination was based on substantial evidence, and was dispositive.

Winn's final contention is that the ALJ failed to pose a complete hypothetical question to the vocational expert (VE) at step five of the sequential evaluation.

In fact, it was at step four of the sequential evaluation that the ALJ determined that Winn was not disabled because she could return to her past work as an electronics assembler. Tr. 23-24. The burden of proving she can no longer perform her past relevant work remains on the claimant, at step four of the sequential evaluation. Tackett, 180 F.3d at 1098. Thus, the ALJ need not solicit the opinion of a VE at this step. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). Accordingly, the ALJ's step four finding will not be found unreasonable on the basis of a vocational hypothetical he didn't need to pose.

Winn has shown no credible evidence to rebut the presumption that she remained capable of performing her past relevant work. Accordingly, I find the ALJ's step four determination is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, the Commissioner's final decision should be AFFIRMED, and a final judgement should be entered DISMISSING this case with prejudice.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals***. Any notice of

16 - FINDINGS AND RECOMMENDATION

**appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections*. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this  26   day of   October  , 2005.

　　　　　　　　　　　　　　　　　　　　　　／s／　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　John P. Cooney
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge